IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANIEL R. BENGTSON,

                Plaintiff,                 OPINION & ORDER

v.                                                       13-cv-262-wmc

CAPITOL ONE BANK,

                Defendant.

---

In this civil action, plaintiff Daniel R. Bengtson lodges several claims against defendant Capital One Bank, all of which are based on what Bengtson describes as Capital One's untimely rejection of his February 2007 offer to satisfy a $650 debt with a $100 payment. Before the court is Capital One's motion for partial summary judgment and partial dismissal. (Dkt. #12.) Because Bengtson has failed to allege -- and cannot allege -- an actionable claim under the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), or the Truth In Lending Act, 15 U.S.C. §§ 1601-1667f, the court will grant Capital One's motion to dismiss and dismiss those federal claims with prejudice. As for Bengtson's state law breach of contract claim, the court would typically decline to exercise its supplemental jurisdiction and dismiss this claim without prejudice. Because Bengtson's contract claim is also a clear loser in any court, the court will grant defendant's motion for summary judgment on that claim and dismiss it with prejudice.[1]

---

[1] Bengtson has filed numerous, rambling, difficult to discern documents in this court. Any and all arguments raised in these filings are mooted by the court's decision on defendant's present motion.

FACTS

**A. Bengtson's History with Capital One**

Bengtson opened his Capital One credit card on July 31, 2004. (Affidavit of Fran Steinberger ("Steinberger Aff.") (dkt. #17) ¶ 2.) At that time, Bengtson agreed to the terms of a Customer Agreement. (Steinberger Aff., Ex. A (dkt. #17-1).) Material to Bengtson's claim here, the Agreement provides:

> We can accept late payments or partial payments, or items marked "payment in full" or other similar language, or payments with a request to apply the payment in a particular manner, without losing any of our rights under this Agreement, including our right to receive payment in full. No payment shall operate as an accord and satisfaction without our prior written approval. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Capital One, P.O. Box 85010, Richmond, VA 23285-5010. You will not make payments from funds obtained from the account or any other credit account with us. If your payment is made to any other address, we may accept the payment without losing any of our rights.

(*Id.* at p.1.) The Agreement also explained that Bengtson could not close his account until "you pay all amounts you owe us under this Agreement . . . including, without limitation, any purchase and cash advance transactions you have authorized, finance charges, late payment fees," and other fees. (*Id.* at p.2.)

In November 2006, Bengtson began to fall behind in his payments. (Steinberger Aff. (dkt. #17) ¶ 5.) By January 2007, Bengtson had missed three payments and owed a balance of $656.68. (Steinberger Aff., Ex. B (dkt. #17-2).) In February 2007, Bengtson sent Capital One via certified mail a $100 payment along with a letter dated February 2, 2007, which provided in pertinent part:

> Here's your remaining balance ($100) if you cho[o]se <u>not</u> to accept it as payment in full, you have 10 days to return it to me. . . . HERE'S your <u>final</u> payment and you know where you can shove your card.

(Steinberger Aff., Ex. C (dkt. #17-3); *see also* Pl.'s Opp'n, Ex. 1 (dkt. #42-4) p.4.) Capital One received the $100 payment and applied it to his outstanding balance on February 6, 2007. (Steinberger Aff., Ex. D (dkt. #17-4).)

On February 21, 2007, Capital One responded to Bengtson's February 2, 2007, letter, directed him to the Customer Agreement, and consistent with the provision quoted above, expressly rejected his offer to satisfy his debt with a $100 final payment, and informed him that his account still had a balance of $577.43. (Steinberger Aff., Ex. E (dkt. #17-5).)

True to his word, Bengtson did not make any further payments on his account. On a July 2007 billing statement, Capital One warned Bengtson that failure to make a sufficient payment within the following seven weeks would result in his account being closed and his failure to make payments would be reported to the national credit bureaus. (Steinberger Aff., Ex. F (dkt. #17-6).) The August 2007 billing statement similarly warned Bengtson. (Steinberger Aff., Ex. G (dkt. #17-7).) Bengtson still failed to make any further payments.

On September 15, 2007, Capital One "charged off" Bengtson's account with a remaining balance of $929.97, including interest. (Steinberger Aff. (dkt. #17) ¶ 11.) The account was then referred to a collection agency; at that time, Capital One also stopped sending account statement to Bengtson. (*Id.*) Still, pursuant to the terms of his original Customer Agreement, Bengtson remained obligated to pay the amount owed.

3

In response to the enactment of the Credit Card Accountability Responsibility and Disclosure Act of 2009, 15 U.S.C. § 1631 *et seq.*, Capital One began sending Bengtson quarterly account statements beginning in 2010.  (Steinberger Aff. (dkt. #17) ¶ 12; *id.*, Ex. H (dkt. #17-8).)

In October 2010 -- apparently in response to these new quarterly statements -- Bengtson sent a "notice to cease and desist and notice of counter claim" to Capital One, which asserted that Capital One had accepted his February 2007 payment of $100 as satisfaction of his outstanding debt.  (Steinberger Aff., Ex. I (dkt. #17-9); *see also* Pl.'s Opp'n, Ex. 3 (dkt. #42-6) pp.3-4.)  Capital One responded on November 4, 2010, and again on November 8, 2010, confirming his outstanding balance, which by that time had grown to $1,752.37.  (Steinberger Aff., Exs. J & K (dkt. ## 17-10, 17-11).)[2]

Capital One sent Bengtson a final quarterly statement for the period December 18 - March 17, 2013.  (Steinberger Aff., Ex. M (dkt. #17-13).)  Capital One then closed his account on April 18, 2013.  (Steinberger Aff. (dkt. #17) ¶ 17.)  After that point, Bengtson has not and will not receive further quarterly statements; similarly, Capital One no longer reports his delinquent account status to the national credit bureaus.  (*Id.*)

B.  **Procedural Posture**

On March 12, 2013, Bengtson filed a complaint in Dunn County Circuit Court, which Capital One timely removed to this court on the basis of this court's federal

---

[2] Capital One sent another letter in September 2011, informing him that his account was "not settled in full" and that his balance was now $1,977.83.  (Steinberger Aff., Ex. L (dkt. #17-12).)

question jurisdiction, 28 U.S.C. § 1331. (Compl. (dkt. #1-1; Not. of Removal (dkt. #1); 5/20/13 Op. & Order (dkt. #11).) Reading Bengtson's complaint generously as required by *Haines v. Kerner*, 404 U.S. 519, 521 (1972), the court understands plaintiff to assert three causes of action: (1) breach of contract (or a related, defensive common law claim of "accord and satisfaction"); (2) violation of the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b); and (3) violations of the Truth In Lending Act, 15 U.S.C. §§ 1601-1667f.[3]

OPINION

**I. Motion to Dismiss Federal Claims**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). In "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in her favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The plaintiff need not provide detailed factual allegations, but must provide "just enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

---

[3] Bengtson also alludes to constitutional violations generally in his complaint. Because Capital One is not "acting under color of state law" as required by 28 U.S.C. § 1983, the court can find no basis for Bengtson to assert a constitutional claim against a private actor like defendant.

A plaintiff must provide enough facts to state a claim that is plausible on its face and allow the "court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. This plaintiff has not done and cannot do so.

### A. FCRA Claim

Bengtson alleges that Capital One "clearly damage[d] my Credit without giving me Due Process of Law" by "placing their claim in collection even after accepting and receiving payment in full and several letters," which made them "well aware that this matter was in dispute." (Compl. (dkt. #1-1) p.2.)

The Fair Credit Reporting Act sets forth certain duties required of furnishers of credit information once notified of a dispute as to the accuracy of the information. In pertinent part, 15 U.S.C. § 1681s-2(b) provides:

> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> **(A)** conduct an investigation with respect to the disputed information;
>
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> **(C)** report the results of the investigation to the consumer reporting agency;
>
> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

6

> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> **(i)** modify that item of information;
>
> **(ii)** delete that item of information; or
>
> **(iii)** permanently block the reporting of that item of information.

The FCRA limits a private right of action in several significant respects, but allows for a civil lawsuit for willful noncompliance (15 U.S.C. § 1681n) and for negligent noncompliance (15 U.S.C. § 1681*o*) of the duties described above. 15 U.S.C. § 1681s-2(c).

Bengtson fails to allege any facts necessary to state a claim under this provision of the FCRA, including that: (1) he disputed information on his credit report to any credit reporting agency; (2) the credit reporting agency sent notice of the dispute to Capital One; and (3) Capital One failed to conduct a reasonable investigation after receiving such notice. While Capital One may have been on notice that Bengtson disputed any outstanding balance after his February 2007 letter, any requirement on Capital One's part to conduct an investigation under § 1681s-2(b)(1) is only triggered after notice *from a credit reporting agency*. *See, e.g.*, *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 908-09 (8th Cir. 2011) ("Because a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA, it need investigate only 'what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'").

7

Accordingly, the court finds that Bengtson has failed to state a claim under the FCRA, and will grant defendant's motion to dismiss that claim.

## B.  TILA Claim

Bengtson also alleges that Capital One's "[a]ctions and practices are completely unlawful and unconstitutional '[a]nd violate Truth In Lending Laws.'" (Compl. (dkt. #1-1) p.2.)

The purpose of the TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The Act requires creditors to make "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). If the creditor fails to do so, it can be held liable for criminal penalties, *see* 15 U.S.C. § 1611, and a debtor can sue for damages (including a statutory penalty of twice the finance charge), *see* 15 U.S.C. § 1640(a). *Beach*, 523 U.S. at 412. TILA mandates strict compliance with the required disclosures; technical violations will not provide creditors with an escape from liability. *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 416 (7th Cir. 1980).

Even with that background in mind, the court can discern no violation of TILA based on Bengtson's allegations. Bengtson's primary complaint appears to be his position that Capital One failed to timely reject his February 2007 offer to satisfy a $650 debt

with a $100 payment and, therefore, defendant should not have pursued further payment on his account. As laid out in the facts above, the Customer Agreement foreclosed Bengtson's proposed offer. Regardless, Bengtson's complaint fails to state a claim under TILA for which relief may be granted and, therefore, the court will grant defendant's motion and dismiss this claim.

## II. Motion for Summary Judgment of Breach of Contract Claim

Having granted defendant's motion to dismiss all federal claims, this court would typically dismiss Bengtson's state law claim without prejudice to be refiled in state court consistent with "the well-established law of this circuit . . . to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.").[4]

However, defendant's entitlement to summary judgment on Bengtson's state court claim is so obvious that the court will decide the state claim as well. *See Groce*, 193 F.3d at 502 (explaining that a court may depart from "usual practice" and continue to exercise supplemental jurisdiction over "'doomed litigation' that will only be dismissed" in state court); *In re Repository Tech., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010) ("[W]hen a state-

---

[4] While plaintiff and defendant appear to be citizens of different states, the complaint does not allege sufficient facts to demonstrate that the jurisdictional amount of $75,000 is met, and thus the state contract dispute is not properly before this court on diversity jurisdiction grounds. *See* 28 U.S.C. § 1332(a).

law claim is clearly without merit, it invades no state interest -- on the contrary, it spares overburdened state courts additional work that they do not want or need -- for the federal court to dismiss the claim on the merits, rather than invite a further, and futile, round of litigation in the state courts.") (internal quotation omitted).

As far as the court can discern, Bengtson's only argument is that Capital One breached its contract by failing to reject his February 2007 offer of $100 for payment in full in a timely manner, and then wrongly pursued other payment of the outstanding balance. This argument is foreclosed by the plain language of the Customer Agreement, which allows Capital One to accept items marked as "payment in full" without losing rights to receive actual payment in full. (Steinberger Aff., Ex. A (dkt. #17-1) p.1.) Even absent that provision, as detailed in defendant's brief in support of summary judgment, the facts do not support an effective accord and satisfaction. (Def.'s Br. (dkt. #13) (discussing Revised U.C.C. § 3-311).)

In response, Bengtson primarily argues that his February 2, 2007, letter barred Capital One from pursuing his debt over the next six years. As explained above, this argument is plainly without merit. Bengtson's other arguments are not material to the motion, but the court will nonetheless address each. First, Bengtson takes issue with this court's order granting Capital One additional time to answer Bengtson's complaint, arguing that Capital One's reason -- that it did not know Bengtson's account number -- was disingenuous. (Pl.'s Opp'n (dkt. #42) p.2.) This court commonly grants reasonable requests for extensions of time to answer, and Bengtson fails to establish how that extension furthers his claims against Capital One. Even if defendant was previously

aware of Bengtson's account number, a request for an extension does not constitute "trickery and deceit." (*Id.* at p.3.)

Next, Bengtson contends that Capital One is "known for manufacturing erroneous and fraudulent documents" as evidenced by other lawsuits against Capital One. (*Id.* at p.4.) Whether Capital One has been found liable in other civil actions is not material to Bengtson's claims here, at least insofar as he has failed to explain how Capital One's actions with regard to other customers is material.

Finally, Bengtson also takes issue with Capital One's use of "a false, fake and wrong name, Dino Bengtson." (*Id.* at p.6.) As demonstrated by documents submitted by plaintiff, he, at least at times, uses "Dino Bengtson" as his name. The February 2, 2007, letter sent to Capital One and attached to his opposition materials is signed by "Dino Bengtson." (Pl.'s Opp'n, Ex. 1 (dkt. #42-4) p.2.) Regardless, Bengtson fails to explain how Capital One's use of "Dino Bengtson" furthers his claims.

ORDER

IT IS ORDERED that:

1) defendant Capital One Bank's motion for partial summary judgment and partial dismissal (dkt. #12) is GRANTED;

2) plaintiff Daniel R. Bengtson's claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), and the Truth In Lending Act, 15 U.S.C. §§ 1601-1667f, and his state law claim for breach of contract (or a defensive claim of accord and satisfaction) are all dismissed with prejudice; and

3) the clerk of the court is directed to enter judgment consistent with the opinion and order and close this case.

Entered this 25th day of February, 2014.

                          BY THE COURT:

                          /s/

                          _____
                          WILLIAM M. CONLEY
                          District Judge